UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JACOB A. POWERS,

    Petitioner,

v.    Case No. 10-CV-1127

JON NOBLE,

    Respondent.

# DECISION AND ORDER

## 1. Background

Jacob A. Powers is incarcerated at the Kettle Moraine Correctional Institution after having been convicted in Fond du Lac County Circuit Court of sexually assaulting a 13-year-old girl. In his second amended petition for a writ of habeas corpus he presents two[1] claims: (1) he was incompetent at the time of his trial and therefore his conviction violates his right to due process; and (2) his trial counsel was ineffective for failing to argue that he was incompetent. (ECF No. 126.) Although distinct claims, they present a common question—was Powers competent at trial? If he was incompetent, his due process rights were violated. *See Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996). If he

---

[1] Powers abandoned the two other claims he presented in his second amended petition. (ECF No. 134 at 1.)

was competent, he was not prejudiced by his attorney's failure to raise the issue of his competence.[2] *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Powers was charged in 2005 and convicted in 2006. The subsequent 18-year path that has brought this action to the point that his petition is finally ready for resolution is complicated, *see, e.g.*, *Powers v. Foster*, No. 10-CV-1127, 2016 U.S. Dist. LEXIS 71329 (E.D. Wis. June 1, 2016) (partially summarizing the procedural history), but those details are now generally of little relevance. Two points merit highlighting—the respondent has waived his procedural defenses (*e.g.*, exhaustion and timeliness) to the petition (ECF Nos. 50 at 3-4; 65 at 4; 75), and all parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 84, 85). The court discusses the relevant procedural history below.

2.  **Standard of Review**

The applicable standard of review depends on whether a state court considered the merits of the petitioner's claim. Following the Antiterrorism and Effective Death Penalty Act (AEDPA), when considering a petition under 28 U.S.C. § 2254 a federal

---

[2] Prejudice exists if the petitioner shows "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. When a federal court assesses in habeas a claim that trial counsel was ineffective for not challenging the petitioner's competency, the petitioner ordinarily proves prejudice if there is merely a reasonable probability that he would have been found incompetent had the issue been raised. *See Burt v. Uchtman*, 422 F.3d 557, 569 (7th Cir. 2005). The present case is unusual because the court is simultaneously asked to determine in the first instance whether Powers was, in fact, incompetent at trial. It would be incongruous for the court to say that Powers was prejudiced because there was a reasonable *probability* he was incompetent, while simultaneously finding that he was not *actually* incompetent. As discussed below, the court's findings avoid this conundrum.

court is ordinarily highly deferential to the decision of the last state court to consider the merits of the claim. *Dassey v. Dittmann*, 877 F.3d 297, 301-02 (7th Cir. 2017) (en banc). The court may grant the petition only if that state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The standard is intentionally difficult to meet. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). However, if no state court addressed the merits of the claim, the federal court reviews the merits of that claim de novo. *Cone v. Bell*, 556 U.S. 449, 472 (2009).

The parties dispute which standard of review applies to Powers's claims.

Following Powers's conviction his appellate counsel questioned his competency, which led to two psychiatric examinations and a hearing in the circuit court. Although appellate counsel initially questioned whether Powers had been competent to proceed at trial, she abandoned that issue before the competency hearing. Following the hearing, the circuit court concluded that Powers was competent to proceed on appeal. (ECF No. 133-1 at 102-03.) Appellate counsel then filed a no merit report, *see* Wis. Stat. § 809.32; (ECF No. 22-3); *Anders v. California*, 386 U.S. 738 (1967). Powers responded (ECF No. 22-4), and appellate counsel filed a supplemental report (ECF No. 22-5).

In finding that no potentially meritorious issues existed and summarily affirming Powers's conviction, the court of appeals stated: "The no-merit report indicates that Powers complained to appointed counsel that his trial counsel did not adequately meet with him to discuss the case or potential plea offers, did not question Powers' competency to proceed, and failed to consider a not guilty by reason of mental disease or defect (NGI) plea." (ECF No. 22-6 at 4.) The court concluded that the records contain "no suggestion that trial counsel failed to fulfill the duty of representation. Although Powers has a low IQ and other mental health problems, those alone cannot support a claim of incompetency or a NGI plea. Powers' testimony at trial does not give the slightest hint that either issue should have been pursued by trial counsel." (ECF No. 22-6 at 4.) In a footnote the court noted that Powers testified that he had warned his co-defendant to "not get caught," which demonstrated that he appreciated the wrongfulness of sexual contact with the victim, and during his allocution he demonstrated that "he is pretty articulate and able to speak with emotion and sincerity so as to manipulate the victim." (ECF No. 22-6 at 4.)

There are two elements of a claim of ineffective assistance of counsel. "First, the defendant must show that counsel's performance was deficient.… Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. The court of appeals' decision reflects an application of the first element of *Strickland's* ineffective assistance of counsel test—deficient performance. Because

4

Powers failed to satisfy that element, the court did not address the second element—whether the alleged deficient performance prejudiced Powers. Because Powers was prejudiced only if he was incompetent, it is the prejudice element of the *Strickland* analysis that aligns with the due process claim Powers presents in his petition.

Because the court of appeals never addressed whether Powers was incompetent at trial, but merely whether trial counsel should have challenged his competence, the court reviews de novo Powers's due process claim and the prejudice prong of the *Strickland* analysis. Only the unreasonable performance prong of Powers's ineffective assistance claim is subject to the AEDPA standard of review. *See McMullen v. Dalton*, 83 F.4th 634, 642 (7th Cir. 2023).

### 3. Relevant Facts

The court has reviewed the roughly 1,700 page record, paying particular attention to Powers's trial testimony (ECF No. 129-2 at 4-39); the presentence report (ECF No. 129-3); Powers's statements at sentencing (ECF No. 129-4 at 18-21) as well as those of his sister (ECF No. 129-4 at 18) and father (ECF No. 129-4 at 21); psychologist Nathan D. Glassman's report prepared at Powers's request following his conviction (ECF No. 129-8 at 9-16); psychiatrist Craig Schoenecker's report prepared at the state's request (ECF No. 129-8 at 1-8); the transcript of the competency hearing (ECF No. 133-1); and psychologist Sheryl Dolezal's reports prepared as part of the habeas proceedings (ECF Nos. 60-1; 103-2).

Powers grew up mostly in foster care due to severe abuse by his parents. (ECF Nos. 60-1 at 2; 129-3 at 9-10; 129-8 at 2.) He was consistently involved in the criminal justice system since he was seven years old. (ECF Nos. 60-1 at 3; 129-3 at 6.) He has an even longer history of mental health difficulties, starting with behavioral problems when he was four years old. (ECF Nos. 60-1 at 4-5; 129-3 at 11.) He was diagnosed with attention deficit disorder, conduct disorder, and post-traumatic stress disorder, and he received special education services throughout school. (ECF No. 129-3 at 11.) His IQ was assessed at the 67-75 range. (ECF No. 129-3 at 12; *see also* 129-8 at 14.) His intellectual abilities were rated to be in the "Mildly Mentally Retarded to Borderline range" (ECF No. 60-1 at 6-8) and later to be in the "Below Average range and at the 8th percentile" (ECF No. 103-2 at 6). "As a result, he will have difficulty adequately problem solving, understanding information and comprehending the meaning of words." (ECF No. 60-1 at 10.)

When he was 14 or 15 years old he was diagnosed with a benign brain tumor, which was surgically removed and required the placement of a permanent shunt. (ECF Nos. 60-1 at 10; 129-3 at 12.) He was able to graduate from high school despite poor grades and significant behavioral problems. (ECF Nos. 60-1 at 2; 129-3 at 11.)

In 1999 or 2000 Powers battered his infant son and was found NGI. (ECF Nos. 60-1 at 10; 129-3 at 8, 12, 13; 129-8 at 3.) He reported that he did not know what this meant and just went along with what his lawyer told him. (ECF No. 129-8 at 3.) In a

psychological assessment as part of those proceedings he was found to have low frustration tolerance; likely to make decisions impulsively and based on limited information; and has difficulty expressing himself, seeing abstract relationships and recognizing the consequences of his actions, or able to use good judgment in addressing problems. (ECF No. 129-3 at 12.) He reported frequent suicidal thoughts (ECF Nos. 129-3 at 11; 129-8 at 3) and twice attempted suicide (ECF No. 129-3 at 11). He did not begin to experience hallucinations until after his conviction. (ECF No. 60-1 at 5; *but see* ECF No. 22-4 at 5 (no merit report stating that his NGI adjudication was related to hallucinations)).

While in jail awaiting trial on this offense he was able to recount the charges he was facing, relate his version of the events of the night of the offense, and discuss upcoming court proceedings. (ECF No. 129-8 at 4.) At trial he was able to offer a thorough and coherent version of the events the night of the offense, including details such as the timing of the events, who was positioned where, what was said, what they were watching on television, the music they listened to, and the clothes people were wearing. (ECF No. 129-2 at 4-26.) He described the interactions between his co-defendant, Matt Galica, and the victim. When he saw Galica and the victim kissing, and believing he knew what Galica intended to do next, he remembered telling Galica, "Don't get caught." (ECF No. 129-2 at 17-18, 36-37.)

Powers explained how he believed that his neighbor, who testified for the state and was friends with the victim, was motivated to lie because Powers had called the police about her playing music too loud and reported that her home was unsafe for her child. (ECF No. 129-2 at 26-28.) He explained that this led to her calling the police on him for "little reasons." (ECF No. 129-2 at 26-28.)

Powers similarly was able to recount the relevant events to the presentence investigator. (ECF No. 129-3 at 3-4.) One of Powers's two[3] sisters told the presentence investigator that she believed he had poor decision-making skills, did not understand boundaries, and did not think things through. (ECF No. 129-3 at 10.) Powers recognized that he likely received a harsh sentence because he consistently denied having had sex with the victim. (ECF No. 129-8 at 13.)

At sentencing Powers continued to deny having committed the offenses but spoke of how he had no reason to reoffend because he wanted to be able to be with his fiancé and his children. (ECF No. 129-4 at 18-21.) He spoke of mental health problems, his traumatic childhood, and his experience in special education classes. (ECF No. 129-4 at 19-20.) He explained how he feared that prison would be especially hard for him given his history and mental health needs. (ECF No. 129-4 at 20.)

Following his conviction he has consistently been able to identify what he believes is wrong about this conviction and what he believes should have been done

---

[3] Glassman stated that Powers was the oldest of five children. (ECF No. 129-8 at 10.) All other sources state he was the oldest of three children. (*See, e.g.*, ECF Nos. 60-1 at 2; 129-3 at 9; 129-8 at 2.)

differently at his trial. For example, he believes that his attorney should have called his girlfriend, who would have testified that he did not get home until 11:00 pm, contradicting the victim's testimony that she was first with him at 7:00 pm. (ECF No. 129-8 at 6.) He recognized that, in the absence of DNA or corroborative physical evidence, the victim's credibility was central to his conviction. (ECF No. 129-8 at 6.)

Powers stated that he did not understand terms like "affidavits" or "motions" but recognized that when he did not understand something related to his case he should ask his attorney. (ECF No. 129-8 at 7.) Nonetheless, Glassman found that Powers understood the different roles of the participants in a trial.

Glassman questioned the reliability of the tests he performed given evidence that Powers exerted insufficient effort or became distracted during testing. (ECF No. 129-8 at 12-13.) Glassman interpreted some of Powers's comments as reflecting inconsistent understanding of the criminal justice system. For example, although he initially expressed understanding of the role of the prosecutor, judge, jury, and his attorney (ECF Nos. 129-8 at 16; 133-1 at 31-32, 54-55), Glassman interpreted Powers's comment to the effect that, "The judge took one look at my file and decided I was guilty," as believing that the judge was the one who decided his guilt (ECF No. 129-8 at 13).

Glassman concluded that Powers's intellectual functioning was at roughly a fifth-grade level. (ECF No. 129-8 at 15.) He was likely immature, impulsive, and inattentive, and had poor decision-making. (ECF No. 129-8 at 15.) He was likely impaired when it

9

came to reasoning about legal issues (ECF No. 129-8 at 15) but demonstrated some understanding of the operation of the court (ECF No. 129-8 at 14-15). However, he would need help understanding things like the subtleties of something like a plea agreement. (ECF No. 129-8 at 16.) Glassman found that Powers would not be able to consult with his attorney, and explained this conclusion by stating that, although he could learn names of terms or concepts, "his true understanding … is limited." (ECF No. 133-1 at 33.) Powers would, in Glassman's opinion, have a hard time weighing the pros and cons of a decision. (ECF No. 133-1 at 34.)

Schoenecker concluded that Powers was competent. He found that he understood his convictions and sentence, was able to discuss the court proceedings and the roles of the participants, understood his plea in this and his prior NGI case, and could express his desired outcome on appeal. (ECF No. 129-8 at 7.) He was able to communicate with counsel, identify issues for appeal, and describe how those issues were relevant to his case. (ECF No. 129-8 at 7.) Although he did not understand all legal concepts, he understood basic concepts consistent with many defendants. (ECF No. 129-8 at 7.) He recognized that, if there was something he did not understand, he should ask his attorney. (ECF No. 129-8 at 7.) Although Powers would require assistance understanding more complex legal concepts, Schoenecker noted that this was common among defendants. (ECF No. 129-8 at 7.)

Dolezal, who examined Powers in 2013 to assess whether his untimeliness in filing his habeas petition should be excused, found that Powers "will have significant difficulty with abstract reasoning, verbal and written expression, decision making and problem solving especially as it relates to complex legal decisions which would include the timely filing of an appeal. He is a concrete thinker who is slow to process information and will be deficient in reasoning and processing various consequences and decisions." (ECF No. 60-1 at 10.) She concluded that Powers's impairments would have made it very difficult for him to be able to timely file a petition for a writ of habeas corpus and otherwise prosecute any claim for post-conviction relief. (ECF No. 60-1 at 11-12.)

Dolezal conducted a second examination and prepared a second report in 2015 wherein she assessed Powers's criminal competency more broadly. (ECF No. 103-2.) She found that "[c]ognitively, his abilities are measured to be Below Average or Mildly Mentally Retarded." (ECF No. 103-2 at 11.) Therefore, he would have difficulty reading documents and need matters explained to him several times before he was likely to understand. (ECF No. 103-2 at 11.) But he had a basic understanding of legal concepts, including the adversarial nature of the proceedings, the roles of the participants,[4] and

---

[4] The report included discussion of the role of the "United States Attorney," which Dolezal states Powers understood. (ECF No. 103-2 at 9.) As Powers was convicted in state court, neither the United States Attorney, nor an Assistant United States Attorney, has ever had any involvement in his case. It is unclear if any misunderstanding was attributable to Powers or Dolezal, or if Dolezal referred to the United States Attorney as merely an example of a prosecutor.

the consequences. (ECF No. 103-2 at 11-12.) His greatest deficit appears to have been in reasoning, although he had basic abilities in this domain. (ECF No. 103-2 at 12.) Certain test results suggested that Powers's most significant impairments may have been the result of feigning, over-exaggeration, or insufficient effort. (ECF No. 103-2 at 12.) Thus, she found that Powers was presently competent. (ECF No. 103-2 at 12.)

   4. **Analysis**

"It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 420 U.S. 162, 171 (1975); *Medina v. California*, 505 U.S. 437, 439 (1992); *see also Indiana v. Edwards*, 554 U.S. 164, 170 (2008) ("the Constitution does not permit trial of an individual who lacks 'mental competency.'"). "Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so." *Cooper*, 517 U.S. at 354 (quoting *Riggins v. Nevada*, 504 U.S. 127, 139-40 (1992) (Kennedy, J., concurring).

"The test for incompetence is also well settled. A defendant may not be put to trial unless he 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the

proceedings against him.'" *Cooper*, 517 U.S. at 354 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam) (quotation marks, ellipses, and brackets omitted); *see also Godinez v. Moran*, 509 U.S. 389, 402 (1993) ("Requiring that a criminal defendant be competent has a modest aim: It seeks to ensure that he has the capacity to understand the proceedings and to assist counsel."). If it is more likely than not that the defendant is incompetent, due process bars his trial. *Cooper*, 517 U.S. at 369. "[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant…." *Drope*, 420 U.S. at 180.

Trying to assess whether Powers was competent at a trial that occurred roughly 18 years ago is difficult. *See Drope*, 420 U.S. at 183; *Timberlake v. Davis*, 409 F.3d 819, 823 (7th Cir. 2005) (noting the difficulty of assessing competency during trial from examinations conducted before and after trial). "Because capacity to assist in one's defense is the main concern, if fitness for trial is being challenged post-trial 'evidence of a defendant's behavior and demeanor at trial are relevant to the ultimate decision of competency to stand trial.'" *Eddmonds v. Peters*, 93 F.3d 1307, 1314 (7th Cir. 1996) (quoting *United States v. Prince*, 938 F.2d 1092, 1094 (10th Cir. 1991); citing *Pate v. Robinson*, 383 U.S. 375, 386 (1966)).

The experts' reports are also relevant and helpful to the question before the court. However, although the court approved funding for an expert to twice assess Powers, no expert attempted to address the specific question that the court is faced with. With the

13
Case 2:10-cv-01127-WED   Filed 05/23/24   Page 13 of 20   Document 142

exception of Dolezal's first report, wherein she assessed whether Powers would have been competent to have complied with the lapsed deadline to file a federal habeas petition (ECF No. 60-1), each expert assessed Powers's contemporary competence. The condition reflected in those reports is not necessarily his condition at the time of trial. Not only may certain mental illnesses relevant to competency vary, often in response to treatment, but many of the sorts of intellectual or knowledge deficits that could render a person incompetent may improve with education.

Powers suffered from significant intellectual deficits and mental health impairments. These impairments could support a finding of incompetence. But "[n]ot every manifestation of mental illness demonstrates incompetence to stand trial….".; *Eddmonds*, 93 F.3d at 1314 (quoting *United States ex rel. Foster v. DeRobertis*, 741 F.2d 1007, 1012 (7th Cir. 1984)); *see also Price v. Thurmer*, 637 F.3d 831, 833-34 (7th Cir. 2011); *Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995) ("Neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial.")."The Constitution does not necessarily forbid trial of the mentally ill." *Eddmonds*, 93 F.3d at 1314. A defendant "need only be able to follow the proceedings and provide the information that his lawyer needs in order to conduct an adequate defense, and to participate in certain critical decisions …." *Price*, 637 F.3d at 833-34.

The record demonstrates that, at all times, Powers understood the nature and object of the proceedings. This is no surprise given Powers's extensive experience with the juvenile and criminal justice systems. Even at the time of the offense he recognized the implications and consequences of the conduct, as reflected by him cautioning his co-defendant, "don't get caught." (ECF No. 129-2 at 17.) When questioned by law enforcement he acknowledged he was initially untruthful because he was concerned about the trouble he may get into. (ECF No. 129-2 at 227.) Contemporaneous with his trial and sentencing he recognized the charges against him and that he faced serious penalties. (*See* ECF No. 129-8 at 4.)

Powers's expressed lack of understanding of certain legal terms or matters, such as how he was convicted when he told the truth at trial (ECF No. 129-8 at 12), do not suggest incompetence when considered in context. Rather, at most, they reflect the sorts of misunderstandings or frustrations with the legal system commonly expressed by defendants. *See, e.g.*, *Timberlake*, 409 F.3d at 823. Defendants who lack even a hint of incompetence commonly express a complete lack of understanding as to how a jury reached its verdict.

That Powers did not understand legal terms like "affidavits and motions" (ECF No. 129-8 at 7) is again not uncommon. All defendants can be expected to have less than a full understanding of the legal system; "that's why they need lawyers, after all." *Timberlake*, 409 F.3d at 823.

His erroneous belief that his NGI adjudication afforded him a lifetime bar against criminal conviction (ECF No. 60-1 at 3) likewise does not support a finding of incompetence. "Persons of unquestioned competence have espoused ludicrous legal positions." *Matheney v. Anderson*, 377 F.3d 740, 748 (7th Cir. 2004) (rejecting petitioner's argument that his insistence "that his crimes [of murder and burglary] should be excused because his ex-wife 'deserved it' and that anyone who failed to see things this way must be in on the conspiracy against him" suggested he was incompetent) (citing *United States v. James*, 328 F.3d 953, 955 (7th Cir. 2003) (holding that the articulation of unusual legal beliefs does not imply incompetency)).

There is no evidence that Powers's deficits materially impaired his ability to consult with counsel. He was cooperative in the competency examinations and, although he was dissatisfied with his trial attorney's performance, there is no hint that this was related to any inability to consult with him. *Cf. Timberlake*, 409 F.3d at 822 (arguing that petitioner "repeatedly expressed an irrational distrust for his attorneys"); *Schmid v. McCauley*, 385 F. Supp. 3d 710, 721 (S.D. Ind. 2019) (noting that petitioner stared blankly when counsel attempted to discuss a plea offer).

Powers was also able to assist in preparing a defense. He had a detailed recall of the relevant events, *cf. Price*, 637 F.3d at 834 (discussing defendant's professed amnesia vis-à-vis incompetence), and was able to present a coherent and thorough version of those events to the jury. He was able to identify biases of the state's witnesses. He

16
Case 2:10-cv-01127-WED   Filed 05/23/24   Page 16 of 20   Document 142

recognized that the absence of physical evidence was relevant, although he may have over-estimated the significance of this fact. He was able to identify his girlfriend as a favorable witness and articulate how she would be able to undercut details of the victim's account (although he again may have misapprehended the significance of the trivial evidence she would have offered).

There is no evidence that Powers's deficits in reasoning—the most significant impairment consistently identified in his assessments—materially impacted the domains relevant to his competence. Although the examining experts concluded that he would require additional time and explanation to understand matters, there is no evidence that any actual lack of understanding undermined his competence.

The fact that he was previously found NGI does not demonstrate that he was incompetent. Competency and NGI are distinct, as evidenced by the fact that a defendant must be competent before he can be found NGI. *See Medina*, 505 U.S. at 449. Significant are the facts that gave rise to the NGI adjudication—specifically because, according to him, he hallucinated that his infant son was his uncle who had recently killed himself and he started shaking him because he was demanding that his uncle explain why he killed himself. (ECF No. 22-4 at 5.) This fact-specific finding did not relate to his ability to understand the nature and object of the proceedings against him, to consult with counsel, or to assist in preparing his defense. Therefore, the court finds,

based on the record as a whole, that at no point was Powers incompetent such that his due process rights were violated.

Further, Powers was not deprived of the effective assistance of counsel. The court of appeals' decision finding that it was reasonable for counsel to not raise an issue of competence (ECF No. 22-6 at 4) was both a reasonable finding in light of the facts and a reasonable application of federal law. The court of appeals reasonably found that "Powers' testimony at trial does not give the slightest hint that [competency] should have been pursued by trial counsel." (ECF No. 22-6 at 4.) It was not unreasonable for trial counsel to not raise the issue of competency under these circumstances.

Therefore, Powers is not entitled to relief on this claim, particularly "[u]nder the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *See Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009).

5. **Conclusion**

Throughout the circuit court proceedings Powers was able to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense. Consequently, he was competent, and his trial and conviction were consistent with due process. The court of appeals' finding that it was reasonable for Powers's trial counsel to not have challenged Powers's competence was a reasonable application of *Strickland*. Therefore, the court must deny Powers's petition.

Because the court is denying Powers's petition, it must decide whether to grant him a certificate of appealability. *See* Rule 11 of the Rules Governing Section 2254 Cases. For the court to issue a certificate of appealability, a petitioner must show that "reasonable jurists" would find the district court's "assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Particularly in light of the non-deferential standard of review applicable to his claim of competence, reasonable jurists could debate this court's conclusion as to that claim. Therefore, the court will grant a certificate of appealability regarding Powers's claim that he was tried while incompetent, in violation of his due process rights.

Given its relationship to his due process claim, the court will also grant a certificate of appealability with respect to Powers's claim that he was denied the effective assistance of counsel. While the court's ultimate conclusion might not be fairly debatable, particularly when subject to the doubly deferential standard of review, the court finds room for debate as to the court's procedural ruling regarding the standard of review applicable to that claim. *Slack*, 529 U.S. at 478.

**IT IS THEREFORE ORDERED** that Jacob A. Powers's second amended petition for a writ of habeas corpus is denied. The Clerk shall enter judgment accordingly. The court issues a certificate of appealability as to his due process and ineffective assistance

of counsel claims.

Dated at Milwaukee, Wisconsin this 23rd day of May, 2024.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge